**Bennie George LOTT, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–76–699.**

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1978.

John T. Elliott, Public Defender, Bert A. Richard, Jr., Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Givens L. Adams, Asst. Atty. Gen., for appellee.

OPINION

CORNISH, Judge:

Appellant, Bennie George Lott, hereinafter referred to as the defendant, brings this appeal following a jury trial and conviction for Second Degree Murder in the Oklahoma County District Court, in the death of a railway employee, Raymond Davidson. Punishment was assessed at a mandatory term of ten (10) years to life imprisonment. Defendant was conjointly charged with co-defendant Gary Wayne Baker, and the cases were severed for trial.

The facts are that defendant and an accomplice, Gary Wayne Baker, ran out of gas in the early morning hours of August 5, 1975, and asked Davidson, who was repairing a malfunctioning signal light, for assistance. Upon his refusal, Davidson was hit in the head with a hammer and shot.

Subsequent investigation determined the railway truck driven by Davidson was missing from the crime scene, and an abandoned car, later determined to belong to the defendant, was found about 75 yards from the body. Later, the railway truck was found abandoned in Moore, Oklahoma.

Defendant was arrested while driving in south Oklahoma City about 5:00 p. m. on August 5 and was read the *Miranda* warnings. The police searched the car and found a .25 caliber pistol on the front floorboard of the passenger side. Ballistics tests showed that Davidson was killed by a bullet fired from this weapon.

Defendant was twice questioned and made statements to the police. The first interview took place at 4:00 p. m. on August 6, when defendant was again advised of his *Miranda* rights in detail but made only exculpatory statements. Prior to the second interview at 6:00 p. m. of the same day, Detective Thompson again advised the defendant that he still "had his rights," and the defendant acknowledged he understood. Thus, there was compliance with the directives of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When asked about the aforementioned crime, defendant confessed and related his participation therein.

The first assignment of error is that the trial court improperly admitted the defendant's oral confession at trial. Defendant relies on *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in which the United States Supreme Court reversed a conviction because the police repeatedly denied the suspect's request to consult with counsel and intentionally and knowingly refused counsel an opportunity to see his client during the course of the

entire interrogation. The United States Supreme Court held the accused had been denied assistance of counsel in violation of the Sixth Amendment, as made obligatory upon the states by the Fourteenth Amendment, and that no incriminating statements elicited during the interrogation could therefore be used against the accused at trial.

We find *Escobedo,* supra, distinguishable from the case at bar. Here, the evidence is conflicting as to whether the investigating officers knowingly refused counsel an opportunity to see his client. The State's evidence shows Detective Blair was not aware of the presence of defense counsel prior to or during the second interview. Nor was defense counsel ultimately denied the right to see his client once his presence was made known to the investigating officers. Furthermore, unlike the accused in *Escobedo,* supra, the defendant did not request to see an attorney, even though he was advised of his right to counsel.

At best, defense counsel's testimony shows he asked to see defendant but was told by a police sergeant, whom he failed to subpoena at trial, that defendant was being interviewed but he did not know where. Furthermore, defense counsel testified he did not know when defendant gave the incriminating statements and admitted defendant could have made the statements even before he arrived.

Since the defendant's motion to suppress the confession because of a denial of the right to counsel revolved around a factual question, determined adversely to the defendant by the trial court, it will not be disturbed on appeal where supported by sufficient evidence that the statement was voluntarily given. *Warren v. State,* Okl. Cr., 495 P.2d 837 (1972). We are of the opinion that there is sufficient evidence to support the ruling of the trial court in the instant case. We also observe that the issue of voluntariness was presented to the jury by adequate instructions, and the jury by its verdict found the admissions to have been voluntary. Therefore, we find the first assignment of error to be without merit.

■ The second assignment of error is that the trial court abused its discretion in allowing testimony by a State's witness, Detective Bob Thompson, regarding the defendant's pretrial silence. The transcript reflects that at the 4:00 p. m. questioning on August 6, defendant made several statements. He admitted his presence near the crime scene, his abandonment of the vehicle, and the means by which he left the scene. The following testimony was then elicited from Detective Thompson, which defendant contends is violative of his Fifth Amendment right to remain silent:

"A. (By Detective Thompson) And I asked him if he was involved in this homicide and he denied it. I take that back. He did not deny it or confirm it.

"Q. What did he do when you said—

"MR. STUBBS: We object to that statement, Your Honor.

"THE COURT: What was the question?

"Q. (By Mr. Pierce) What did he do when you asked him that question?

"THE COURT: Objection's overruled.

"THE WITNESS: He just wouldn't look at me or answer me."

Defendant relies on *Buchanan v. State,* Okl.Cr., 523 P.2d 1134 (1974), to support his position that it was improper to use defendant's pretrial silence against him and to show that when asked an inculpatory question, he refused to answer. We note that the rule in *Buchanan v. State,* supra, was expanded in *Burroughs v. State,* Okl.Cr., 528 P.2d 714 (1974), and applied most recently in *Roberts v. State,* Okl.Cr., 568 P.2d 336 (1977), where we said:

" 'There is a presumption that error of this kind is prejudicial, and in reviewing a case it becomes necessary for this Court to give full consideration to the record and determine whether said presumption has been overcome and that prejudice did not result.' "

We have carefully reviewed the record and find that the presumption of prejudice created by the testimony of defendant's pretrial silence was overcome by his com-

plete confession made two hours after refusing to answer the alleged inculpatory question. Additionally, defendant's car was found near the crime scene and, upon arrest, defendant was driving a car which contained the murder weapon. Furthermore, the physical evidence gathered at the scene was consistent with the details of defendant's confession. It is, thus, readily apparent that the evidence of defendant's pretrial silence was not alone used to imply his guilt. We are therefore strongly persuaded that any error now asserted on review is without merit.

■ Defendant's third assignment of error is that the trial judge abused his discretion by making comments that were prejudicial to defendant's right to a fair and impartial trial. Defendant argues the trial judge commented on the evidence and directed disparaging remarks toward defense counsel, relying on four particular excerpts from the trial transcript, and urges these constitute reversible error. Regarding three of the court's comments, the State in its brief does not deny the remarks were improper, but contends the defendant waived the right to have the assignment considered on appeal as a result of failure to object where there was no fundamental error. *Borden v. State*, Okl.Cr., 407 P.2d 909 (1965); *Love v. State*, Okl.Cr., 360 P.2d 954 (1960). We agree.

■ The fourth instance involved the comments by the trial judge upon the materiality of certain evidence defendant sought to introduce. We again agree with the trial court's conclusion that whether the victim's body was found at 4800 or 4600 South High Street is immaterial to any issue in this case. The trial judge interrupted defense counsel and requested that he explain to the court out of the presence of the jury the need for the inquiry. It is well established that a trial judge has wide latitude in conducting a trial, including the right to question a witness for the purpose of clarifying testimony and the right to interrupt an improper line of questioning, so long as he does not indicate to the jury his views of the issues in contention. *Brown v. State,* Okl.Cr., 506 P.2d 1396 (1973).

Here, the remarks did not bear upon the guilt or innocence of the defendant. In reviewing the record in the present case, it appears that the comments made by the trial judge fell within the proper bounds of discretion.

■ In his fourth assignment of error, defendant asserts an abuse of discretion by the trial court in allowing testimony by defendant's common law wife, Carron Kay Hendrix. Defendant contends this violated 22 O.S.1971, § 702, which provides neither husband nor wife shall in any case be a witness against the other unless exceptional circumstances are met, none of which exist in the case at bar. While Ms. Hendrix and defendant had at one time been legally married, they subsequently obtained a divorce. They later resumed living together for a short period, but evidence taken at an in camera hearing was conflicting as to whether they held themselves out to be husband and wife. The witness acknowledged that in August, 1975, she gave a statement to the authorities denying her marriage to the defendant. She testified, however, that she began living with the defendant in July of 1975 and considered herself married to defendant at the time they were living together.

The record also reflects that one Carolyn Lott lived with defendant from 1972 until separated from him in 1975, but never obtained a divorce. At trial, she testified she was the present common law wife of defendant.

The State points out that the alleged common law marriage between Ms. Hendrix and defendant failed to meet the test of *Chapman v. State,* 84 Okl.Cr. 41, 178 P.2d 638 (1947), which holds a common law relationship must be between parties capable of entering into such a contractual relationship. It appears from the record that defendant was under a legal disability both at the time the crime was committed and at trial, since he was not divorced from Carolyn Lott.

While the evidence on this point is conflicting, we conclude that when taken in its entire context, the trial court did not abuse its discretion by finding Ms. Hendrix competent to testify.

 Defendant's final assignment of error is that there was an accumulation of error requiring reversal. Since we have found all the assignments of error to be without merit, this assignment is similarly without foundation. *Brinlee v. State,* Okl. Cr., 543 P.2d 744 (1976).

For the above and foregoing reasons, the judgment and sentence appealed from is *AFFIRMED.*

BUSSEY, P. J., concurs.